**Rex Joe McCLOUD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–0541–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 13, 1985.

Mary B. Hennessy, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., William J. Delmore, III, Lori Millberg, Harris County Asst. Dist. Attys., Houston, for appellee.

Before JACK SMITH, BASS and LEVY, JJ.

## OPINION

JACK SMITH, Justice.

A jury convicted appellant of attempted murder and assessed his punishment at four years imprisonment and a fine of $5,000. We affirm.

In his first ground of error, appellant alleges that the trial court erred in refusing to include a verdict form which would have permitted the jury to grant him probation on both his penitentiary term and his fine. The verdict form actually presented to the jury gave it only three options: confinement, confinement and a fine, or probated confinement and a fine. Appellant specifically objected to the verdict form and requested that the jury be allowed to probate the fine as well as the confinement.

We agree with appellant's contention that it was error for the trial court to refuse his requested verdict form. The punishment option he requested is authorized by Tex.Code Crim.P.Ann. art. 42.12, sec. 3a (Vernon Supp.1985). *See Arcos v. State,* 628 S.W.2d 867 (Tex.App.—Corpus Christi 1982, no pet.). However, we disagree with appellant that the trial court's

refusal to give the requested verdict form was reversible error in the instant case. The jury assessed four years confinement and refused to give probation. At the present time, there is no authority which permits probation of a fine in an attempted murder case where punishment includes confinement. *See Ex parte McIver,* 586 S.W.2d 851 (Tex.Crim.App.1979). We hold that any error by the trial court in refusing the requested charge was rendered harmless when the jury denied probation of appellant's confinement. Appellant's first ground of error is overruled.

In his second ground of error, appellant alleges that the trial court erred in refusing his requested charge on the lesser included offense of reckless conduct. The court is required to charge on a lesser included offense only when some evidence shows that, if he is guilty at all, he is guilty only of the lesser included offense. *Broussard v. State,* 642 S.W.2d 171 (Tex.Crim. App.1982). Appellant asserts that the evidence shows that he did not shoot at the police officers, but shot at the floor, attempting to frighten away people he believed to be burglars.

Officer Elvin D. King testified that he and his partner, Officer Dennis Spradlin, were on patrol on the night of February 28, 1984, and that they received a call concerning a gunshot at the Carribean Apartments at about 1:30 a.m. When they arrived, they found appellant talking to two other police officers in the apartment complex parking lot. Appellant told them that he thought someone was walking past his bedroom window in the back of his apartment and trying to break in, and that he shot out his window to scare the prowler away. King testified that he went with appellant into the apartment and saw the hole in the bedroom window. Spradlin testified that he found no footprints in the boggy ground under appellant's bedroom window, but he did find a bullet hole about five feet above the ground in a shed in a neighbor's yard behind the apartment. King told appellant not to shoot again unless someone was actually breaking in, and the police left.

At about 2:15 a.m., King and Spradlin received another report of a gunshot at the same location, and when they arrived back at the apartment complex, they found another apartment resident in the parking lot. He told them that he had heard a dog barking and someone yelling at the dog, and then a shot was fired and the dog did not bark again. King went to appellant's apartment and knocked on the door, and appellant asked him to come inside. Appellant said that he had heard a gunshot, but he denied firing again. King saw a .357 revolver on the kitchen table and checked to see if a shot had been fired from that gun. He found all six shells in the gun, unloaded it, and told appellant not to shoot any more. Spradlin testified that he found a neighbor's dog unharmed in the yard behind appellant's apartment.

At about 3:25 a.m., King and Spradlin received a third call reporting gunshots. When they arrived, they found the same neighbor in the parking lot with a friend. The neighbor said that they had heard several shots coming from appellant's apartment. King and Spradlin approached appellant's apartment and took up positions on either side of the front door. They knocked and identified themselves, and as King looked down the front of the apartment, he saw appellant on his knees in front of a sliding glass door in a room to the left of the front door. King walked over to the sliding door and asked appellant to open the front door. Appellant refused and said that he was going to get his gun and shoot. King went back to the front door and continued to ask appellant to open the door so they could talk to him.

Appellant came to the narrow full-length window next to the front door and pushed the curtain aside, and King saw that he was holding a pistol in his right hand, with the barrel pointed at the floor. King and Spradlin drew their guns and told appellant to put down his gun. Appellant knelt down on the ground and put the gun on the floor, keeping his hand on the gun. He asked the officers who they were, and they said that they were Houston policemen. Appellant

said that he did not believe them, and he asked to see some identification. Spradlin leaned closer to the window, opened his coat, and showed appellant his badge. Appellant immediately raised the gun, Spradlin jumped back, and appellant fired out the window in the direction of the officers. The bullet hit the pavement by the door where Spradlin had been standing, and a chip of the pavement hit him in the leg. Spradlin testified that appellant pointed the gun directly at him. Spradlin took cover in the doorway of the apartment next door, and King ran to a wooden barricade nearby. The two officers yelled for appellant to throw the gun down and come out with his hands up. Appellant broke out the rest of the glass in the shattered window with his pistol and his feet, stepped outside briefly, looked around, and stepped back inside. The officers yelled to him again, and he threw out the gun and came out through the window with his hands up. The policemen arrested him, and when they went back into the apartment, they found numerous bullet holes in the walls and spent casings on the floor.

Appellant testified that he was getting ready for bed on the night in question when he heard a dog barking in the neighbor's yard behind his bedroom. He turned off his bedroom lights, looked out the window, and saw a prowler walking past his apartment. He called the police emergency number, but no one answered, and while he was on the phone, the prowler walked past his window again. Appellant fired his revolver out the window to scare away the prowler, and the prowler ran away. Appellant called the police again and told them that he had scared away a prowler by shooting out of his window. He then ran outside with his gun and attempted to find the prowler, with no success.

He further testified that when the police arrived the first time, he met them in the parking lot and handed them his gun. They unloaded it and went with him into his apartment, where he showed them the broken back window. Later that night, he was watching television when the police came back. They knocked on his door, and he invited them in. They asked if he had heard a shot, and he said that he had. He had been cleaning his pistol while he watched television, but he said that he did not remember the officers unloading his gun during that visit.

Still later that night, appellant stated that he was in his bathroom when he heard a knock on his front door. When he went to the front of the apartment, he heard someone mumbling outside, and he looked out the window and saw someone walking past. A few moments later, he heard a loud "beep, beep" in front of his apartment. When the noise started a second time, appellant yelled that if it did not stop, he would fire through the window. The sound stopped, but it started again in back of the apartment. Again, he yelled for it to stop and threatened to shoot through the back wall. When it started again, he shot towards the floor in the back of the apartment. He called his mother in Arkansas and asked her to call the police for him, and left his phone off the hook. He heard "beeping" again, and fired two more shots at the floor in the back of the apartment "to get the beeper to shut up." Twice more he fired into the floor to silence the noise.

About 15 minutes later, appellant heard someone in front of his apartment say there were police outside, and he went to the window. He saw two people outside who claimed to be policemen, and he yelled for them to throw their picture identification cards down on the sidewalk by the window so that he could see them. Appellant worked as a security guard, and he said that, because anyone could buy a uniform, he did not rely on a uniform to distinguish police officers, but required photo identification. He said that he thought the prowler might have come back, or someone else might be "after" him. When the people outside failed to produce any photo identification cards, appellant told them he was going to fire through the window, then he pointed his gun toward the floor and fired. He said he was behind his sink when he fired the shot, and not standing at the

window. He denied that he shot at any person outside the apartment, or that he intended to hit anyone. He said it was dark outside of his apartment, and that no lights were on inside.

 Appellant argues that the evidence shows that he did not intend to threaten anyone with serious bodily injury, since he told the people to move away before he shot, and that his testimony established that if he was guilty at all, he was guilty only of reckless conduct in shooting his gun towards the floor. Reckless conduct is defined in Tex.Penal Code Ann. sec. 22.05 (Vernon 1974) as follows:

(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

(b) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

Reckless conduct may be a lesser included offense of attempted capital murder, and of aggravated assault. *Godsey v. State*, 640 S.W.2d 336 (Tex.App.—San Antonio 1982, pet. granted). In *Godsey*, the defendant walked outside on the orders of the police surrounding his apartment, slowly drew a revolver out of his waistband and pointed it at the ground, and then slowly pointed it at two of the officers. Before he could fire, the officers shot him. The Court of Appeals held that the trial court erred in refusing the requested charge on reckless conduct, because the defendant testified that he had no intention of shooting any of the officers.

In the instant case, appellant's testimony was that he had no intention of shooting anyone, but aimed his pistol at the floor in an effort to scare away unknown persons from his apartment. If the jury had believed appellant's testimony, the offense of reckless conduct would have been established. We hold that the trial court erred in refusing appellant's requested charge.

However, we also find that the error was harmless. The jury was instructed on the charges of attempted capital murder and the lesser included offenses of attempted murder and aggravated assault. In order to convict appellant of aggravated assault rather than attempted murder, the jury would have had to acquit appellant of attempted murder by finding that appellant had no specific intent to kill the officer. *See* Tex.Penal Code Ann. sec. 19.02(a)(1) (Vernon 1974); sec. 15.01(a) (Vernon Supp. 1985). Only after the jury found that appellant had no specific intent to kill the officer would they have considered whether he was guilty of aggravated assault or reckless conduct. The jury convicted appellant of attempted murder by finding that he had the intent to kill Spradlin. Thus, even with the proper charge it would not have reached the question of whether appellant was guilty of the lesser included offense of reckless conduct. We hold the omission in the charge to be harmless, as it was not calculated to injure the rights of appellant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g).

The judgment of the trial court is affirmed.