Opinion issued March 2, 2006




 









  





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01079-CR




JUAN SALINAS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 976459




MEMORANDUM OPINION
          Juan Salinas, appellant, pleaded not guilty to murder. A jury found him guilty
and assessed punishment at 80 years’ confinement. In four points of error, appellant
contends (1) the evidence is legally insufficient to support his conviction, (2) the
evidence is factually insufficient to support his conviction, (3) the trial court erred in
refusing to instruct the jury on negligent homicide, and (4) his trial counsel was
ineffective for failing to investigate or prepare for the punishment phase of trial. We
affirm.
BACKGROUND
          On January 6, 2004, Gloria Osuna was shot in the head and later died from her
injuries.


 On the night of her death, appellant and Gloria came back to appellant’s
house around 10 p.m. and went to their room. Four people, other than appellant and
Gloria, were present in the house: appellant’s mother, Virginia; appellant’s cousin,
Jose; appellant’s sister, Marisol; and a family friend, George. Shortly thereafter,
everyone present in the house heard a gun discharge in appellant’s room. The bullet
struck Gloria right above her hairline on the right side of her head, and she later died. 
          When the police arrived, appellant could be heard repeatedly screaming “we
need to get them niggers.” Appellant told the investigating officers that while
appellant and Gloria were walking home, a car pulled up beside them and shot at
them, hitting Gloria. Appellant said he then carried Gloria into the house. However,
the police could not find any blood trails leading to the house or any evidence of
shots being fired outside. The investigating officers then noticed appellant had left
the house momentarily. When asked where he went, appellant said he had to wash
the blood off his hands from carrying Gloria inside. After asking appellant why both
sinks in the house were dry, appellant changed his story and said that he went outside
to spit. Suspecting that appellant hid the gun, an officer went outside, searched the
property, and found a .32 revolver with one spent casing. An officer bagged
appellant’s hands, placed cuffs over those bags, and put appellant in a patrol car. 
While in the patrol car, appellant shredded the bags covering his hands. 
          Officers took appellant to the homicide offices where he later gave a
videotaped statement. In his statement, appellant recanted his drive-by shooting story
and said that Gloria’s head accidentally hit the revolver, discharging the gun. 
Appellant then changed his story a second time and said that he had been twirling the
fully loaded revolver on his finger when it accidentally discharged. 
          At trial, conflicting stories were presented of the events leading to the shooting. 
The State presented Jose, who testified that appellant and Gloria were arguing when
they entered the house, continued to argue in appellant’s room, and did not stop
arguing until the gun was fired. Appellant called Marisol and George, who each
testified that neither heard appellant and Gloria arguing before the shooting. 
          The trial court’s charge to the jury included instructions for the offenses of
murder and manslaughter, but the trial court denied appellant’s request for
instructions on criminally negligent homicide. The jury found appellant guilty of
murder.
LEGAL AND FACTUAL SUFFICIENCY
          In his first and second points of error, appellant contends there is legally and
factually insufficient evidence to show that he intentionally or knowingly caused
Gloria’s death. 
          In criminal cases, appellate courts review the legal sufficiency of the evidence
by viewing it in the light most favorable to the verdict to determine if any rational fact
finder could have found the essential elements of the criminal offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our
analysis considers all evidence presented at trial, we may not re-weigh the evidence
and substitute our judgment for that of the fact finder. King, 29 S.W.3d at 562. The
jury, as trier of fact, is the sole judge of the credibility of the witnesses and may
believe or disbelieve all or any part of a witness’s testimony. Reece v. State, 878
S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, no writ).
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof, beyond a reasonable doubt, could not have been met. See Zuniga
v. State, 144 S.W.3d 477, 483 (Tex. Crim. App. 2004). We must also be mindful that
the fact finder is the sole judge of the credibility of the witnesses and may choose to
believe all, some, or none of the testimony presented. Cain v. State, 958 S.W.2d 404,
407 & n.4-5 (Tex. Crim. App. 1997). The fact finder is the judge of the weight to
give contradictory testimonial evidence because it turns on an evaluation of
credibility and demeanor. Id. at 408-09. In conducting a factual-sufficiency review,
we must discuss the evidence that, according to appellant, most undermines the jury’s
verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
          A person commits the offense of murder if he (1) intentionally or knowingly
causes the death of an individual or (2) intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of an individual. 
Tex. Pen. Code Ann. § 19.02(a), (b) (Vernon 2003). Intent can be inferred from the
acts, words, and conduct of the defendant. Patrick v. State, 906 S.W.2d 481, 487
(Tex. Crim. App. 1995); Lee v. State, 964 S.W.2d 3, 8 (Tex. App.—Houston [1st
Dist.] 1997, pet. ref’d).
          Appellant does not dispute that he held the gun when it had fired and that this
caused the deceased’s death. Appellant does dispute that he fired the gun
intentionally. Specifically, appellant contends that, because he accidentally fired the
gun when he allegedly twirled the gun on his finger, there is insufficient evidence on
the element of intent. Because only appellant and the deceased were present when
the gun discharged, appellant asserts that the only evidence regarding intent is his
statement that he did not intend to kill the deceased. Appellant’s argument amounts
to an assertion that the circumstantial evidence is insufficient to support his
conviction.
           Circumstantial evidence is most often used to prove the requisite mens rea, and
one’s actions are generally reliable circumstantial evidence of one’s intent. Fitts v.
State, 982 S.W.2d 175, 188 (Tex. App.—Houston [1st Dist.] 1998, pet. refused). 
Circumstantial evidence, by itself, may be enough to support the jury’s verdict. 
Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); see Smith v. State,
965 S.W.2d 509, 515 (Tex. Crim. App. 1998). It is not necessary that every fact point
directly and independently to the defendant’s guilt; it is enough if the conclusion is
warranted by the combined and cumulative force of all the incriminating
circumstances. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994);
Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1994).
          Viewed in the light most favorable to the verdict, a rational jury could have
determined the following from the evidence: (1) appellant and Gloria were arguing;
(2) the argument continued after both went into appellant’s room; (3) the arguing
stopped as soon as the gun was fired; (4) when police officers arrived to investigate,
appellant told the officers that Gloria had been shot in the street in a drive-by
shooting; (5) even though appellant said he carried the victim into the house, no
blood trail was found leading toward the house; (6) no gunshots had been fired
toward the house; (7) while the police were investigating the crime scene, appellant
went outside and told the officers he had gone to wash his hands; (8) when the police
asked appellant why the two sinks in the house were dry, appellant recanted and said
he had gone outside to spit; (9) an officer then went outside and found the gun that
had been used to shoot Gloria; (10) appellant’s hands were bagged with paper sacks
and cuffs placed over them to preserve any evidence; (11) while in the back of a
patrol car, appellant destroyed potential evidence by shredding the bags covering his
hands; (12) during appellant’s videotaped statement, he retracted the drive-by
shooting story and said Gloria bumped her head on the revolver setting it off; (13)
appellant changed his story a second time claiming that he was flipping the gun
around when it went off accidentally; (14) the gun had a double-action hammer that
required continuous pressure for it to discharge


; (15) the firearms examiner testified
(a) the gun did not have a hair trigger, (b) the gun never fired accidentally or
spontaneously during testing, (c) the gun would not discharge when the examiner
flipped it around like appellant described, and (d) the gun was “unlikely” to discharge
unintentionally; (16) the bullet’s trajectory followed a steep, downward, front-to-back, right-to-left path; (17) the medical examiner testified the location and trajectory
of the bullet were consistent with a person ducking their head trying to avoid
something. We conclude that, from this evidence as viewed in the light most
favorable to the verdict, a rational jury could have determined, from appellant’s acts
and conduct, that appellant intentionally fired the handgun and murdered Gloria. See
Fitts, 982 S.W.2d at 188; see Patrick, 906 S.W.2d at 487 (stating that intent can be
inferred from the acts, words, or conduct of the defendant).
          In our neutral review of the evidence, appellant asserts the only evidence of
intent was the interrogation of appellant, in which he stated he did not intentionally
shoot Gloria because the gun went off accidentally. Appellant provided the following
controverting evidence: (1) Marisol and George Delgado did not hear appellant and
Gloria arguing; (2) if enough pressure were applied to the gun’s trigger, it could
discharge while being twirled; and (3) the medical examiner could not testify with a
medical certainty as to the position of the body when the gun discharged. Based on
a neutral review of all of the evidence as outlined here and above, we conclude that
the evidence is not so weak that the verdict is clearly wrong and manifestly unjust,
nor is the contrary evidence so strong that the standard of proof, beyond a reasonable
doubt, could not have been met. See Zuniga, 144 S.W.3d at 483. We overrule
appellant’s first and second points of error.
LESSER-INCLUDED OFFENSE
          In his third point of error, appellant contends the trial court erred in refusing
to instruct the jury on negligent homicide as a lesser-included offense of murder.
Standard of Review
          In determining whether a charge on a lesser-included offense is required, we
apply a two-step analysis. Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App.
2002); Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). Under the
first part of Feldman and Rousseau, a party must establish that the lesser-included
offense must be included within the proof necessary to establish the charged offense. 
Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981); Feldman, 71 S.W.3d at 750;
Rousseau, 855 S.W.2d at 672. Second, the record must include some evidence that
would permit a jury to rationally find that, if guilty, the defendant is guilty only of the
lesser-included offense. Feldman, 71 S.W.3d at 750; Rousseau, 855 S.W.2d at 672.
          In determining whether any evidence exists in the record that would permit a
rational jury to find that the defendant is guilty only of the lesser-included offense,
anything more than a scintilla of evidence is sufficient to entitle a defendant to a
lesser charge. Forest v. State, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999). We
review all evidence introduced at trial to determine whether the trial court erred in
refusing to instruct the jury on a lesser-included offense. Enriquez v. State, 21
S.W.3d 277, 278 (Tex. Crim. App. 2000); Banda v. State, 890 S.W.2d 42, 60 (Tex.
Crim. App. 1994). Credibility determinations and conflicts in the evidence are not
factors to consider in determining whether the trial court erred in failing to instruct
the jury on a lesser-included offense. Banda, 890 S.W.2d at 60. 
          Criminally negligent homicide is a lesser-included offense of murder. 
Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992). Thus, the only
question presented on this point of error is whether this record contains evidence that
appellant is guilty only of criminally negligent homicide.
          A person commits the offense of criminally negligent homicide if he causes the
death of an individual by criminal negligence. Tex. Pen. Code Ann. § 19.05(a)
(Vernon 2003). A person acts with criminal negligence when “he ought to be aware
of a substantial and unjustifiable risk that the circumstances exist or the result will
occur.” Id. § 6.03(d). The key to criminal negligence lies in the actor’s failure to
perceive the risk of which he should have been aware. Ford v. State, 14 S.W.3d 382,
387 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Williams v. State, 930 S.W.2d
898, 904 (Tex. App.—Houston [1st Dist.] 1996, writ ref’d). Appellant points to the
following as evidence that appellant failed to perceive the risk involved: (1)
appellant’s statement that he had twirled the gun on his finger and (2) testimony from
household members at appellant’s “shock and horror.” We disagree that this is some
evidence that appellant failed to perceive the risk involved. A careful review of the
record reveals no evidence to suggest that appellant failed to perceive the risk
involved with twirling a loaded gun on his finger. 
          Furthermore, we conclude appellant was not harmed by the lack of an
instruction on criminally negligent homicide. This Court, in McCloud v. State, held
that the trial court’s failure to submit an instruction on a lesser-included offense of
reckless conduct was harmless error when the jury was instructed on attempted capital
murder and lesser-included offenses of attempted murder and aggravated assault, and
the jury found appellant guilty of attempted murder. 692 S.W.2d 580, 584 (Tex.
App.—Houston [1st Dist.] 1985, no writ). On appeal, McCloud asserted the trial
court erred in not instructing the jury on reckless conduct. Id. at 582. This Court held
that the jury would have to find that McCloud had no specific intent to kill the officer
before they could find him guilty of aggravated assault or reckless conduct. Id. at
584. However, since the jury found McCloud guilty of attempted murder, which
requires a finding of specific intent, the jury would never have reached the lesser-included offense of reckless conduct, even with a proper charge. Id. Thus, the
omission in the charge was harmless error. Id.
          Here, the jury was instructed on the crimes of murder and manslaughter. 
Murder requires that a person (1) intentionally or knowingly cause the death of an
individual or (2) intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual. Tex. Pen. Code Ann.
§ 19.02(b) (Vernon 2003). Manslaughter requires that a person recklessly cause the
death of an individual. Id. § 19.04(a). Because the jury found appellant guilty of
murder (intentional or knowing conduct), the jury never reached the lesser offense of
manslaughter (reckless conduct). Had there been an instruction on criminally
negligent homicide, the jury would have to acquit appellant of murder first, by finding
that appellant did not intentionally or knowingly cause the death of Gloria. Had the
jury acquitted appellant of murder, they would have next considered manslaughter. 
The jury charge clearly stated, “[u]nless you find beyond a reasonable doubt that the
defendant is guilty of murder, or if you have a reasonable doubt thereof, you will
acquit the defendant of murder and next consider whether the defendant is guilty of
the offense of manslaughter.” (emphasis added) Because the jury found appellant
guilty of intentional or knowing conduct, the jury did not reach the question of
recklessness and would not have reached the question of criminal negligence, even
with the proper charge. We overrule appellant’s third point of error.
INEFFECTIVE ASSISTANCE OF COUNSEL
          In his fourth point of error, appellant contends he received ineffective
assistance of counsel at the punishment stage because his attorney (1) failed to hire
an investigator, (2) failed to prepare witnesses who testified at the punishment stage,
(3) failed to call favorable punishment witnesses to testify, and (4) failed to subpoena
favorable records. 
          Under Strickland v. Washington, to prevail on an ineffective assistance of
counsel claim, the applicant must show that (1) counsel’s performance was deficient
by falling below an objective standard of reasonableness and (2) there is a probability
sufficient to undermine the confidence in the outcome that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different. 466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Bone v. State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002). We “indulge a strong presumption that counsel’s conduct falls
within the wide range of reasonable assistance,” and that “the challenged action
‘might be considered sound trial strategy.’” Strickland, 466 U.S. at 689, 104 S. Ct. at
2065 (citing Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1995)).
          Appellate review of defense counsel’s representation is highly deferential and
presumes that counsel’s actions fell within the wide range of reasonable and
professional assistance. Id. 466 U.S. at 690, 104 S. Ct. at 2066. The appellant must
overcome this presumption. Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.—Houston [1st Dist.] 1996, no writ). Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation was so
deficient and so lacking in tactical or strategic decision-making as to overcome the
presumption that counsel’s conduct was reasonable and professional. See Thompson
v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). This Court will not engage
in speculation about trial counsel’s reasoning or strategy. See Bone, 77 S.W.3d at
835.
          In Gaston v. State, Gaston contended her trial counsel was ineffective at the
punishment stage of trial for failing to investigate or to put on any type of punishment
evidence on appellant’s behalf. 136 S.W.3d 315, 322 (Tex. App.—Houston [1st
Dist.] 2004, pet. struck). Because there was evidence that Gaston’s trial counsel
spoke with two of appellant’s potential witnesses, the court held this did not amount
to a failure to investigate and did not render ineffective assistance of counsel. See id. 
          In the present case, appellant’s trial counsel did more than speak with only two
potential witnesses. At the punishment phase of trial, appellant’s trial counsel called
three witnesses on appellant’s behalf: (1) his cousin, Jose, (2) his sister, Marisol, and
(3) and his mother, Virginia. He also cross-examined all of the State’s witnesses
except for Gloria’s mother. 
          However, appellant asserts his trial counsel should have hired an investigator
to find more favorable witnesses to testify during the punishment stage such as
neighbors, teachers or school coaches. At the motion for new trial, appellant’s trial
counsel testified that his reasoning for not doing so was primarily based on trial
strategy. Trial counsel testified he did not need an investigator to locate witnesses
because all of the witnesses at appellant’s house on the night of the shooting were
easy to locate. He stated that he did not call teachers, coaches, or subpoena school
records because appellant dropped out of high school and alternative school, and it
was trial counsel’s strategy not to provide this negative information. He did not call
neighbors or investigate them because numerous neighbors had witnessed appellant
discharging guns in front of his house on multiple occasions, and the State provided
notice to trial counsel of its intent to enter these extraneous offenses into evidence if
appellant called those neighbors to testify. Finally, he spoke with appellant’s family
regarding the punishment phase of trial and made a strategic decision to not overly
prepare the witnesses so that they would not appear coached. Given that trial
counsel’s decisions were calculated strategic decisions, we cannot conclude that
appellant’s trial counsel provided ineffective assistance of counsel. Id. (stating that
the decision whether to present witnesses is largely a matter of trial strategy). 
Accordingly, we overrule appellant’s fourth point of error.
CONCLUSION
          We affirm the judgment of the trial court.
 
 
 

                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).