IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1863-04





JOSE JESUS GUZMAN, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


WEBB COUNTY





 Cochran, J., delivered the opinion of the Court, in which Meyers,
Price, Johnson, Keasler, Hervey, and Holcomb, JJ., joined. Keller, P.J., filed
a concurring opinion. Womack, J., dissented.


O P I N I O N 



 Jose Jesus Guzman put a loaded semi-automatic gun to his ex-girlfriend's head and
pulled the trigger. The gun fired. She was seriously injured. He was indicted for attempted
murder. At trial, appellant, who was sixteen at the time of the shooting, testified that he had
removed the clip from the gun, so he thought that it was not loaded. It was. Although the
trial judge instructed the jury on the lesser-included offense of aggravated assault, he refused
appellant's requested instruction on the lesser-included offense of deadly conduct. The jury
convicted appellant of attempted murder and assessed the maximum sentence. On appeal,
appellant argued that the trial court erred by failing to instruct the jury on deadly conduct. 
The court of appeals disagreed: "We do not find support in the record for a rational jury to
conclude Guzman was only guilty of deadly conduct." (1) 

 We granted appellant's petition for discretionary review to determine whether a
defendant is entitled to an instruction on deadly conduct if the evidence shows that the
defendant intentionally pulled the trigger on a gun he believed was unloaded. (2) We find that,
given the evidence in this case, he is not. Thus, we affirm the court of appeals.

I.

 The evidence at trial showed that Daniella Galvan and appellant, both high school
freshmen, had been sporadically dating or "going around" together for several months. 
Daniella last broke up with appellant at school on the afternoon of February 21, 2002. Then
she and several of her friends went to a nearby park. Appellant's friend, Lauro Salinas,
drove appellant to the park, and appellant asked Daniella to go for a ride. She refused. 
Lauro drove appellant home and left. Appellant retrieved a gun that he had bought "on the
street" ten days before and had hidden in his mother's pile of planting soil. Appellant
testified that he took the clip out of the gun and the bullets out of the clip. He put the clip
and bullets in his pocket, and he put the gun in his waistband. He decided to use the gun to
scare Daniella into telling him why she had broken up with him. He then went looking for
her. Lauro drove by and saw appellant walking, so he gave appellant a ride to Daniella's
house. Lauro did not know that appellant had a gun. No one was at Daniella's house, so
Lauro drove appellant to the home of Gilda De Leon, Daniella's friend.

 By the time Lauro and appellant drove up to Gilda's house, several of Daniella's
friends were out in the front yard, waiting for a ride to a carnival. Daniella, who was still
inside, came out when she heard that appellant had asked for her. The two talked just in front
of Lauro's car. Meanwhile, Gilda walked over to the driver's side of the car to talk to Lauro.

 After a few minutes, Lauro and Gilda heard Daniella and appellant arguing. Daniella
said, "No, no, no," and when her friends looked up, they saw that appellant had her in a
headlock with a gun pointed at the side of her head. Appellant immediately pulled the trigger
and a bullet shot into Daniella's head. Appellant testified that he was shocked that the gun
fired because he had taken out the clip, but, unbeknownst to him, there was a bullet in the
chamber. Daniella fell to the ground, and appellant started back toward Lauro's car. Danny,
one of Daniella's friends, began yelling at appellant. Appellant turned around and pointed
the gun at him. Danny fell to the ground, and appellant lowered the gun and got back into
Lauro's car. They drove off.

 Lauro said appellant sat silently in the car, still holding the gun. Lauro was shocked
because he had never seen appellant with a gun until the shooting. When Lauro stopped the
car after driving about ten blocks, appellant jumped out and ran off. Appellant testified that
he fled because he knew no one would understand that it had been an accident. Lauro called
the police.

 Daniella lay in the street, her head in a pool of blood, until an ambulance arrived. She
stayed in the hospital for a month and slowly improved, but she was still not completely
recovered by the time of trial. Daniella testified that the last thing she remembered was
going inside Gilda's house to use the restroom. She remembered nothing of the conversation
with appellant or of the shooting.

 Police quickly learned that appellant was the shooter and obtained a warrant for his
arrest. Appellant, meanwhile, had walked across the international bridge into Mexico, taken
a taxi to the bus station, and bought a ticket to Aguascalientes. After three months, appellant
decided to come back and turn himself in to the police because "my conscience all the time
that I was there never left me alone in peace."II.

 The primary disputed issue at trial was appellant's culpable mental state. The State
argued that the shooting was intentional. Appellant argued that the shooting was accidental. 
The court's proposed charge included instructions on attempted murder and the lesser-included offense of aggravated assault. At the charge conference, appellant requested a
charge on misdemeanor deadly conduct which would require the jury to find that appellant
recklessly engaged in conduct that placed Daniella in imminent danger of serious bodily
injury. Appellant argued that he was entitled to an instruction on deadly conduct "because
of the defendant's testimony that he was not aware of the risk that this gun was going to
discharge." 

 The State responded that there was no evidence that if appellant was guilty, he was 
guilty only of deadly conduct because "there was evidence presented by the defendant where
he basically proved up all of the elements of aggravated assault." The State argued that:

 He said that he knew of the risk. He-he testified that he knew that there was
a risk that he could cause serious bodily injury or death to Daniella Galvan,
that he consciously pulled the trigger, that he consciously put the gun to her
head, and he knew that that constituted-that that was an act that constituted a
risk.

 He also testified that Daniella Galvan received an injury from a firearm
that he discharged, therefore proving up all the elements of aggravated assault,
and by doing that, then the defense cannot argue that a jury could only
conclude that a lesser included offense was-was committed.


The trial court denied the request for the instruction on deadly conduct. 

 In closing argument, the State insisted that appellant had the intent to kill: his story
was incredible, and there was no way that the gun could have been loaded and cocked when
he bought it and remained in that condition for ten days without accidently discharging. 
Defense counsel argued that the State failed to prove that appellant was guilty of either
offense. He did not have even a reckless state of mind; he had not been aware of any risk;
it was an accident, pure and simple. The jury found appellant guilty of attempted murder and
sentenced him to 20 years' imprisonment and a $10,000 fine.

 Appellant complained on appeal that the trial court erred by failing to include an
instruction on deadly conduct in the jury charge. The court of appeals disagreed:

 There is no evidence to support a finding that discharge of the gun was
accidental; on the contrary, Guzman admitted he intended to pull the trigger
and knowingly did pull the trigger. Guzman's conduct of intentionally pointing
a gun at Daniella Galvan's head and pulling the trigger extends beyond
recklessly placing another in imminent danger of serious bodily injury. . . . The
evidence that Daniella Galvan was injured by Guzman's intentional act of
shooting her precludes a rational inference that Guzman was only guilty of
deadly conduct; therefore, Guzman was not entitled to a lesser included
instruction on deadly conduct. (3)


III.

 Upon the defendant's request, a lesser-included offense instruction shall be included
in the jury charge if:

 (1) "the requested charge is for a lesser-included offense of the charged offense;
and 

 (2) there is some evidence that, if the defendant is guilty, he is guilty only of the
lesser offense." (4) 


Thus, we must first compare the elements of the charged offense (before any evidence is
offered at trial) with the elements of the lesser offense that might be added to the jury charge. 
If that offense is a lesser-included offense of the charged offense as it is modified by the
indictment allegations, the first prong of the test is met. Then, we must determine if, at the
close of the case, there is some evidence that would support a rational finding that the
defendant is guilty only of the lesser included offense. If both of these prongs are met a
defendant is entitled to a charge on the lesser-included offense.

 We begin by setting out the elements of deadly conduct:

 1. The defendant 

 2. Recklessly 

 3. Engaged in conduct that placed Daniella Galvan in imminent danger of serious
bodily injury. (5)


We then must compare these elements to the elements of attempted murder as alleged in the
indictment: (6)

 1. The defendant, Jose Jesus Guzman

 2. With the specific intent to commit the offense of murder

 3. Attempted to cause the death of Daniella Galvan

 4. By shooting her with a firearm about the head area [and]

 5. That attempt amounted to more than mere preparation that tended but failed
to effect the commission of the offense of murder.


 We then compare the elements of both offenses to determine whether, in proving
attempted murder as it was alleged in the indictment, the State necessarily had to prove all
of the elements of deadly conduct, plus something more. (7) 

 To prove deadly conduct, the evidence would have to show that the defendant
engaged in conduct that placed Daniella in imminent danger of serious bodily injury. To
prove attempted murder as alleged in this case, the evidence would have to show that the
defendant attempted to cause the death of Daniella "by shooting her with a firearm about the
head area." That is clearly an act which placed her in imminent danger of serious bodily
injury, regardless of the result. Thus, the State, in proving attempted murder by shooting
Daniella about the head area, would necessarily have to prove that the defendant engaged in
conduct that placed her in imminent danger of serious bodily injury. Neither the indictment
for attempted murder nor the lesser offense of deadly conduct required proof of any actual
bodily injury to Daniella; thus the entitlement to a charge on the lesser-included offense of
deadly conduct does not, in this case, depend upon any bodily injury that the evidence might
prove. In this respect, then, the conduct elements of the two offenses are the same, and
neither requires a result (i.e., bodily injury). (8) 

 However, the offenses differ with respect to mental state. To prove deadly conduct,
the evidence would have to show that the defendant acted recklessly; to prove attempted
murder, the evidence would have to show that the defendant acted with specific intent. 
Article 37.09(3) of the Code of Criminal Procedure explicitly states that one offense is a
lesser-included of a greater offense if it differs from the greater "only in the respect that a
less culpable mental state suffices to establish its commission." A reckless mens rea is a less
culpable state of mind than that of an intentional mens rea. Thus, deadly conduct is a lesser-included offense of attempted murder under the pleading filed in this case. The first prong
of the test is met.

 Deadly conduct is also a lesser-included offense of aggravated assault as it was
contained in the jury charge in this case. (9) In the present case, no one disputes that the lesser-included offense of aggravated assault was properly included in the jury charge. In both
aggravated assault and deadly conduct, the culpable mental state is recklessness. And, in
proving aggravated assault, the evidence would have to show that appellant intentionally,
knowingly or recklessly shot Daniella "with a firearm about the head area" and that (1) she
suffered serious bodily injury as a result; or (2) she suffered bodily injury and the defendant
used or exhibited a deadly weapon during the assault. (10) With deadly conduct, the evidence
would have to show merely that the defendant placed Daniella in imminent danger of serious
bodily injury by shooting her with a firearm about the head area, regardless of whether he
actually caused serious bodily injury or any bodily injury at all. (11) Again, because the State necessarily must prove that the defendant placed Daniella in imminent danger of serious
bodily injury to prove that he committed aggravated assault, deadly conduct is also a lesser-included offense of aggravated assault as set out in the jury charge. (12) Thus, deadly conduct
is a lesser-included offense of both attempted murder as alleged in the indictment and
aggravated assault as contained in the jury charge. (13) 

 We must now consider whether the second prong is also met. As stated previously,
to be entitled to the deadly conduct charge, there must be some evidence in the record that
would permit a jury to rationally find that if the defendant is guilty, he is guilty only of deadly
conduct, not attempted murder and not the intervening lesser-included offense of aggravated
assault which was also contained in the jury charge. (14)

 In his brief, appellant relies very heavily upon a statutory presumption that may be
used in lieu of direct evidence to prove the element of recklessness in the deadly conduct
statute. That statutory presumption is, "Recklessness and danger are presumed if the actor
knowingly pointed a firearm at or in the direction of another whether or not the actor
believed the firearm to be loaded." (15) Appellant contends that, while he did not act recklessly,
and therefore cannot be found guilty of aggravated assault, his actions invoke a presumption
of recklessness under § 22.05(c), and thus the second prong of the test is met. He argues that 

 if an actor believes a firearm to be unloaded, a jury would be entitled to acquit
a defendant on a charge of aggravated assault, but convict on a charge of
deadly conduct. 

 Thus, where the evidence establishes that the actor believed the firearm
to be unloaded, the court should instruct the jury on the lesser included offense
of deadly conduct.


 In support of this argument, appellant points to testimony by expert witnesses at the
trial that "[t]here is no way of knowing, just by looking at this particular handgun, and
without manipulating this handgun, whether there is a bullet in the chamber[.]" And,
throughout his own testimony, appellant stressed that he did not know the gun was loaded. 
He thought it was unloaded because he had removed the clip, and thus did not actually
consciously disregard a known risk.

 However, appellant's contention is flawed in three important ways. First, a statutory
presumption, such as the one upon which appellant relies, is not an element of an offense
because it is not part of the statutory definition of the crime. (16) It is simply a guide to jurors
that they may infer recklessness from proof, beyond a reasonable doubt, that the defendant
pointed a firearm at another person. (17) It "is not evidence nor does it 'supply' evidence." (18) 
If one accepts appellant's contention that the evidence at trial showed that he did not act
recklessly, a permissive statutory presumption does not push appellant over the hurdle of
meeting the second, evidentiary, prong of the test. In sum, a statutory presumption may play
no part in determining whether a defendant is entitled to a lesser-included offense instruction.

 Second, appellant cannot argue that there is some evidence that he "recklessly
engaged in conduct that places another in imminent danger of serious bodily injury," but no
evidence that he "recklessly caused serious bodily injury," simply by arguing that he did not
act with actual recklessness. He contends that, because he testified that he thought the gun
was unloaded, there is some evidence in the record that he was not aware of any risk of harm,
and thus he did not actually possess the required mental state of recklessness. But, he argues, 
the statutory presumption would nonetheless allow the jury to conclude from the very act of
pointing that gun at Daniella that he was reckless for the purposes of a deadly conduct
charge. However, the presumption, if it applied at all to the determination of lesser-included
offenses (which it does not), would also prove recklessness for the greater offense of
aggravated assault. That is, a reckless state of mind may be inferred or presumed from the
act of pointing a gun at someone regardless of whether that person is charged with reckless
deadly conduct or reckless aggravated assault. While the statute setting out the elements of
aggravated assault does not include a special subsection describing the presumption that
recklessness may be inferred from the act of pointing a gun at a person's head, it would defy
logic-and the canons of statutory construction-to assume that the legislature intended such
a statutory presumption to apply to the lesser, but not the greater, offense when both require
exactly the same "reckless" mental state.

 Third, appellant's own testimony showed that he was consciously aware of the risk
of harm his conduct posed to Daniella, and thus acted recklessly:

Q: And you knew that you had committed a crime, didn't you, just by pointing the gun
at Daniella's head?


A: Yes, sir.


Q: And you knew that pointing a gun at someone's head was dangerous, didn't you?


A: Yes, sir.


Q: And you knew that that - that a gun can cause death or serious bodily injury, didn't
you?


A: Yes, sir.


Q: And even though you knew that, you disregarded that risk, didn't you?


A: Sort of, sir.


Q: You chose to disregard the risk, didn't you?


A: Sort of, sir.


Q: Even though you knew it was wrong you decided to do it anyway, didn't you?


A: Yes, sir.


Q: Because you were upset?


A: Yes, sir.


Q: And it was-it was-You were conscious about what you were doing? In other words,
you knew what you were doing, didn't you? You knew you were pointing a gun at
Daniella's head?


A: Yes, sir.


Q: And you knew that you pulled the trigger, didn't you?


A: Yes, sir.


 Appellant fully admitted that he had a reckless state of mind and that his conduct
resulted in serious bodily injury. His testimony, if believed, established the offense of
aggravated assault. It does not matter that appellant may have also believed that the gun was
unloaded; he was fully aware of the fact that pointing a gun at someone's head and pulling
the trigger is a very dangerous act. It logically follows, then, that there is no evidence in the
record that would permit a jury to rationally find that if the defendant is guilty, he is guilty
only of deadly conduct and not aggravated assault. (19)

 Therefore, we reject appellant's broad assertion that "[d]ue process of law requires
a charge on the lesser included offense of deadly conduct where there is evidence that the
actor believed the firearm was unloaded." There might be an instance in which such
evidence would require the trial court to give the jury a charge on the lesser-included offense
of deadly conduct, but the evidence in this case did not require any such instruction. (20) We
affirm the judgment of the court of appeals.

Delivered: March 29, 2006

Publish
1. Guzman v. State, No. 04-03-00548-CR, 2004 Tex. App. LEXIS 8594, *3-4 (Tex.
App.-San Antonio 2004) (not designated for publication).
2. We granted review on the question "whether the testimony of the 16 year old defendant
that he thought that the handgun was not loaded, because the magazine, or clip, had been
removed, is enough to require an instruction on the lesser included offense of deadly conduct?"
3. Guzman v. State, 2004 Tex. App. LEXIS 8594.
4. Hayward v. State, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005); Campbell v. State, 149
S.W.3d 149, 153 (Tex. Crim. App. 2004).
5. Tex. Penal Code § 22.05(a).
6. The indictment read, in pertinent part:

 JOSE JESUS GUZMAN, with the specific intent to commit the offense of
murder, did then and there attempt to cause the death of an individual,
DANIELLA GALVAN[,] by shooting the said DANIELLA GALVAN with a
firearm about the head area, said attempt amounting to more than mere
preparation that tends but fails to effect the commission of the offense intended,
contrary to Sections 15.01 and 19.02 of the Penal Code . . . 
7. See Jacob v. State, 892 S.W.2d 905, 907-09 (Tex. Crim. App. 1995) (noting that "each
definition in Article 37.09 is stated with reference to the 'offense charged' and does not enlarge
upon the offense charged, but either restricts or reduces culpability as compared to the offense
charged;" thus, "the elements of the offense claimed to be a lesser included offense must be
examined to see if the elements are functionally the same or less than those required to prove the
charged offense").
8. For example, a defendant could be found guilty of attempted murder even if his gun had
not contained any bullets or if the gun had misfired, as long as he pointed the gun at his victim's
head or pulled the trigger with the intent to cause death.
9. See Bell v. State, 693 S.W.2d 434 (Tex. Crim. App. 1985). In Bell, we stated,

 Patently, threatening another with imminent bodily injury is engaging in
conduct. When that threat is accomplished by the use of a deadly weapon, by
definition the victim is "exposed" to the deadly character of the weapon and the
inherent risk of serious bodily injury. The danger of serious bodily injury is
necessarily established when a deadly weapon is used in the commission of an
offense. It follows, therefore, that proof of threatening another with imminent
bodily injury by the use of a deadly weapon constitutes proof of engaging in
conduct that places another in imminent danger of serious bodily injury.

 We hold that under Art. 37.09(1), . . . reckless conduct is a lesser included
offense of "the offense charged" in the instant case because it is established by
proof of the same facts required to establish the commission of aggravated assault
by the use of a deadly weapon.

Id. at 439; see also Isaac v. State, 167 S.W.3d 469, 474 (Tex. App.-Houston [14th Dist.] 2005,
pet. ref'd) ("we conclude that misdemeanor deadly conduct, as defined by article 22.05(a) of the
Texas Penal Code, is a lesser-included offense of aggravated assault by use of a deadly weapon
as charged in appellant's indictment."); Ortiz v. State, 144 S.W.3d 225, 231-32 (Tex. App.
-Houston [14th Dist.] 2004, pet. ref'd) (en banc). 

 Also, because aggravated assault was not charged in the original indictment, we must
evaluate whether deadly conduct is a lesser-included offense of aggravated assault as charged in
the jury charge, rather than as charged in the indictment.
10. Tex. Penal Code § 22.02(a).
11. The State asserts that appellant was not entitled to the deadly conduct instruction
because "if injury actually occurs from an individual's deliberate conduct, the act of shooting
towards the victim constitutes more than deadly conduct." State's Brief at 10 (citing Ramirez v.
State, 976 S.W.2d 219, 227 (Tex. App.-El Paso 1998, pet. ref'd) ("Section 22.05 of the Texas
Penal Code covers intent which falls short of harming another: that is, although no physical harm
results, the acts are highly dangerous.")). Several other courts of appeals have also held that
deadly conduct covers only dangerous acts that cause no physical harm to the complainant. See,
e.g., Garcia v. State, 92 S.W.3d 574, (Tex. App.-Austin 2002, no pet.);Walker v. State, 994
S.W.2d 199, (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd); Mares v. State, 903 S.W.2d 419,
(Tex. App.-Eastland 1995, pet. ref'd). 

 As stated in the Model Penal Code Commentaries, the rationale behind "deadly conduct"
or "reckless conduct" statutes is to punish risk creation:

 More fundamentally, the rationale for Section 211.2 implicates the general
significance of resulting harm in the law of homicide and personal injury. 
Criminal homicide requires that the actor cause the death of another-that is, that
his conduct must actually bring about the harm ultimately feared. In many other
circumstances, however, actual harm is not a necessary condition of criminal
liability. The case for punishment may be complete even if the ultimate harm
against which the offense is aimed has not occurred. Conduct that is in some
sense preliminary to evil, if committed with the required state of mind, may be an
appropriate target of penal sanctions. Examples abound. The law condemns
perjury though the trial outcome is not affected. It proscribes bribery of a public
servant even though no official action is influenced thereby. It punishes
possession of drugs and other contraband without regard to proof of unlawful use. 
Even in the context of homicide, preliminary conduct may be punished under the
law of attempt if the actor has the requisite intent to bring about another's death
and if his conduct strongly corroborates the existence of that purpose. In each
case the act done and the accompanying state of mind are sufficiently conclusive
of blameworthiness and dangerousness to justify punishment without proof of
harm.

 Section 211.2 does no more than import this principle into the law of
unintentional homicide and personal injury. Recklessly causing death of another
is criminal homicide. Recklessly causing serious bodily injury is an assault. 
Section 211.2 applies to "recklessly engaging in conduct that places or may place
another in danger of death or serious bodily injury," without regard to whether
either harm actually occurs.

Model Penal Code Part II Commentaries, vol. 1, § 211.2, at 194, 198-99. While deadly
conduct is generally aimed at capturing conduct that falls short of harming another, we cannot
say that all shootings resulting in death or injury are inevitably and necessarily beyond the scope
of the offense of deadly conduct. See, e.g., Hayes v. State, 728 S.W.2d 804, 809-10 (Tex. Crim.
App. 1987) (error to refuse to charge on reckless conduct when defendant testified that shooting
was "an accident" which occurred during a struggle); Ortiz v. State, 144 S.W.3d 225, 233 (Tex.
App.-Houston [14th Dist.] 2004, pet. ref'd) ("While deadly conduct may be a lesser included
offense of murder, it is not necessarily a lesser included offense of murder in all cases;" when
defendant was charged with murder, trial court did not err in giving instruction on deadly conduct
even though complainant had died of gunshot wound); compare Walker v. State, 994 S.W.2d
199, 203 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd) (concluding that "[i]f injury actually
occurs from appellant's deliberate conduct, the act of shooting towards the victim constitutes
more than deadly conduct[,]" while noting that "[w]e are not holding that all shootings resulting
in injury are greater than deadly conduct. To the contrary, accidental shootings that cause injury,
if found to have been done recklessly, have been held to be deadly conduct").
 Certainly there is nothing in the statute which expressly or even implicitly limits
prosecution (or conviction) for the offense of deadly conduct to only that conduct which
threatens, but fails, to cause injury to another. The offense of deadly conduct neither requires nor
excludes proof of physical injury. See Ford v. State, 38 S.W.3d 836, 845 (Tex. App.-Houston
[14th Dist.] 2001, pet. ref'd) (in trial for aggravated assault, no error in submitting, at State's
request, instruction on lesser-included offense of deadly conduct even though victim had suffered
bodily injury). As the court explained in Ford:

 When bodily injury is caused by the use of a deadly weapon, the complainant is
necessarily exposed to the deadly character of the weapon and the inherent risk of
serious bodily injury. The danger of serious bodily injury is necessarily
established when a deadly weapon is used in the commission of an offense. It
follows, therefore, that proof of causing bodily injury by the actual use of a deadly
weapon constitutes proof of engaging in conduct that places another in imminent
danger of serious bodily injury. In other words, one who causes bodily injury with
a deadly weapon necessarily places the complainant in imminent danger of serious
bodily injury. Additionally, since deadly conduct is not a result oriented offense,
the State can prove that offense by merely proving appellant engaged in the
conduct without the additional requirement that a specific result was caused with
the requisite criminal intent. Therefore, in the instant case, the offense of deadly
conduct could be established by the same or less proof than that needed to
establish aggravated assault by causing bodily injury. 

Id. at 845. Furthermore, from the plain language of the penal statute, it seems clear that it is not
the result of conduct (death, serious bodily injury or bodily injury) that distinguishes the offense
of deadly conduct from murder, attempted murder, or aggravated assault, but rather the mental
state with which the person acts. 
12. See Godsey v. State, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986) ("Aggravated
assault and reckless conduct are lesser included offenses of attempted murder and attempted
capital murder.")
13. See, e.g., McCloud v. State, 692 S.W.2d 580, 584 (Tex. App.-Houston [1st Dist.] 1985,
no pet.) (noting that reckless conduct may be a lesser-included offense of attempted capital
murder and the intervening lesser offenses of attempted murder and aggravated assault; harmless
error to omit jury instruction on reckless conduct because jury convicted defendant of one
intervening lesser offense-attempted murder-thus, it did not consider second intervening lesser
offense of aggravated assault, which is a greater offense than reckless conduct).
14. Banda v. State, 890 S.W.2d 42, 60-61 (Tex. Crim. App. 1994) (in capital murder trial,
where charge was given on lesser offense of murder, trial court properly denied instructions on
aggravated sexual assault and burglary: "Without deciding whether appellant meets the first
prong of the test, we hold appellant fails to meet the second prong. The evidence adduced at trial
shows that appellant had the deceased's blood on his shirt and told family members that he had
killed an old lady. In fact, appellant's statements indicate that if he was not guilty of capital
murder, he was guilty of murder alone . . . . There is no evidence in the record from which a
rational trier of fact could conclude that appellant was guilty only of aggravated sexual assault or
burglary.").
15. Tex. Penal Code § 22.05(c).
16. See, e.g., Hirad v. State, 14 S.W.3d 351, 352 n.1 (Tex. App.-Houston [14th Dist.] 2000,
pet. ref'd) (rejecting defendant's contention that the statutory presumption in § 22.05(c)
constitutes an additional element or required fact of the offense of deadly conduct).
17. All presumptions in criminal cases must be permissive; mandatory presumptions are
unconstitutional in criminal cases. Ulster County Court v. Allen, 442 U.S. 140 (1979); Francis v.
Franklin, 471 U.S. 307, 317 (1985). Thus, while a jury may infer that evidence beyond a
reasonable doubt that a defendant pointed a gun at another person sufficiently proves
recklessness, it is not required that a jury do so.
18. Green v. State, 893 S.W.2d 536, 545 (Tex. Crim. App. 1995).
19. Cf. Isaac v. State, 167 S.W.3d 469, 475 (Tex. App.-Houston [14th Dist.] 2005, pet.
ref'd). In Isaac, the court of appeals held that the trial court was required to give an instruction
on deadly conduct because the jury could have believed the defendant's denial that he pointed the
gun at anyone, and he claimed that the gun discharged only when his stepmother's son charged
him and grabbed his hand. Id. According to the defendant, he went to his father's barber shop
with a gun, but he intended only to scare his family and then to kill himself in front of his father. 
Id. The court of appeals concluded "that appellant's testimony provided some evidence from
which a jury could rationally find that, although appellant never intended to threaten his family
with imminent bodily injury (a necessary element of aggravated assault), he did recklessly engage
in conduct that placed his family in danger of serious bodily injury (as required to prove deadly
conduct." Id.
20. We note that, even if appellant had been entitled to the requested instruction, any error
would be harmless, in light of the jury's rejection of the intervening lesser-included offense of
aggravated assault. See Masterson v. State, 155 S.W.3d 167, 172 (Tex. Crim. App. 2005). There
is significant evidence in the record that appellant acted recklessly, rather than with the intent to
kill. Therefore, aggravated assault was a realistic option for the jury. The fact that the jury
convicted appellant of attempted murder, despite the availability of aggravated assault, indicates
that the jury did, in fact, believe that appellant acted with the specific intent to kill Daniella. See
Levan v. State, 93 S.W.3d 581, 585-86 (Tex.App.-Eastland 2002, pet. ref'd) (omission of charge
on criminally negligent homicide harmless in murder trial because jury rejected the intervening
lesser offense of manslaughter ).